## THE PEOPLE, &c., *Respondents, v.* JOHN G. WIGGINS, *Appellant.*

CONTINUANCE IN CRIMINAL CASES.—An affidavit for a continuance in a criminal case, on account of the absence of Defendants' witnesses, which shows that the witnesses left the Territory "temporarily," and to "spend the winter elsewhere," without showing *when* they left, and that the Defendant did not know of their intention to leave, and that he made no effort to subpœna them, does not show proper diligence upon the part of the moving party.

UNCOMMUNICATED THREATS.—Where it is clear from the evidence that the Defendant was the assailing party, and the deceased was unarmed at the time of the homicide, proof of uncommunicated threats is inadmissable.

INSTRUCTIONS.—When the propositions of Law, arising in a criminal case, are given to the jury in *separate* instructions, the Court should remind the jury that the instructions are all to be considered together; but when all the instructions are embodied in one statement, this rule does not necessarily apply

APPEAL from the Third District Court.

The facts appear in the opinion.

*Hoge & Hempstead,* for Appellant.

*Sumner Howard,* U. S. District Attorney, for the People.

BOREMAN, J., delivered the opinion of the Court:

The other Judges concurring.

In October last the Defendant was indicted for murder. Having been duly arraigned and pleading "not guilty," his case was set for trial on the 24th day of November following. At the latter date, upon application of Defendant, by reason of the absence of material witnesses, the cause was continued for the term. At the following term, on the 8th day of March, 1876, Defendant filed his affidavit for a further continuance, on account of the absence of material witnesses, but this application for a continuance was denied. Thereupon a trial was had, and a verdict of guilty of murder in the first degree rendered, and Defendant sentenced to be shot on the 23d day of the present month, a motion for a new trial having been overruled.

The Defendant appeals to this Court.

The first error assigned is the overruling of the application for a continuance in March last. From the affidavit of Defendant it appears that the desired witnesses went to San Francisco "on business and to spend the winter;" that their homes at the time were in Salt Lake City, and that they were absent "temporarily," only. But when they went to San Francisco "to spend the winter," does not appear, and whether they did spend the winter there or elsewhere out of the Territory, does not appear. It is not shown that Defendant did not know they were going, nor that he did not know before they went away that they were material witnesses for his defense. Indeed, there is nothing in the affidavit to show that the witnesses did not go away by his consent. And there is nothing whatever to show that they could not have been subpœned before they left. Yet no effort was made to have them subpœned or to get their testimony on the trial. We do not, therefore, think that proper diligence was shown. Applications for continuance being always addressed to the sound discretion of the Court, we cannot say that the Court below has abused that discretion.

The second error assigned is the action of the Court in ruling out the testimony of threats made by the deceased against the Defendant shortly before the homicide, but which threats were not communicated to the Defendant before the killing.

It is a general rule that such uncommunicated threats are inadmissable. There are, however, exceptions to the rule. Defendant claims that in this instance there is an exception to the rule, and that there is a conflict of testimony as to who fired the first shot, and that the evidence of such threats should have been introduced to aid the jury in arriving at a correct conclusion on the point.

As the prisoner and one of the witnesses were walking down the street, and saw the deceased, he (deceased) was sitting upon a carriage step in front of a public hotel, with his hands up to his face and his head bowed down, and was apparently in a stupor or asleep. As they were

thus passing, the Defendant jumped behind the witness and immediately the firing began, and the testimony of two witnesses is that the firing was from east to west. The prisoner was on the east of deceased. The fact that the witness who was walking with the prisoner did not know who fired the first shot, is in its character negative testimony, and cannot be weighed against the positive testimony of two witnesses referred to, which showed that it was impossible that deceased should have fired the first shot.

The fact that Defendant stooped down as if to pick up something after the shooting, and the fact that deceased was shown to have had a pistol shortly before his death, might, if there were no other facts proven, be sufficient to raise a doubt as to whether deceased had a pistol at the time of his death—but it could not raise a doubt as to who fired the first shot. But we do not think that the deceased even had a pistol when the shooting took place. His pistol was in the hands of Defendant just before and just after the shooting, and if deceased had a pistol, as one witness testifies, shortly before his death, it was evident that he did not have it when he was killed, for after the first shot he threw up his hands and said: "Do not kill me, I am unarmed!" a thing which it is not reasonable to suppose he would have said if he had just fired the first shot; and besides, no pistol was found on his person, nor near him, after the homicide. If Defendant had picked up a pistol, it would certainly have been found upon him. This second pistol —if any existed—could not have been in deceased's possession when he was killed.

We do not therefore think there was a conflict in the evidence as to who fired the first shot, and we cannot see that there was any error in the action of the Court below in refusing to allow proof of the uncommunicated threats referred to.

The giving of what are called the 5th, 6th, 9th, 11th, 12th and 13th instructions, is objected to. Some of these instructions, if taken separately, might be objec-

tionable.   It is a well established rule that all of the instructions given are to be considered together, and in some cases the jury is reminded of this duty.   The rule, that all of the instructions are to be considered together, is the true one, when the propositions of Law are given separately to the jury.

In the present case, however, the declarations of Law are not given separately, but all are embodied as a whole in one statement of the Law.   In such a case it certainly was not necessary to remind the jury that they must take the instructions together as a whole, for they were given as a whole, although for convenience in this Court the Counsel have divided the charge up into various parts, and designated and numbered these parts as distinct instructions.

Taking the whole case together, therefore, we do not find any error.   It was fairly presented to the jury; the jury have found their verdict, and we do not see wherein they have erred in so doing.   The painful character of such cases—the prisoner being under sentence of death—admonishes the Court to be especially careful that no wrong is done, yet the character of the case cannot be expected to influence the Court to depart from what it believes to be clearly the law and justice of the cause.

It is therefore the order of this Court that the judgment of the Court below be affirmed.

SCHAEFFER, C. J., and EMERSON, J., concurred.